1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9    United States of America,                    No. CR-10-08050-001-PCT-MTL
                                                        CR-11-02173-001-PHX-MTL
10                     Plaintiff,                        CR-11-02174-001-PHX-MTL
                                                        CR-11-02295-001-PHX-MTL
11   v.
                                                   **ORDER**
12   Ronald Michael Capito,

13                    Defendant.

14

15          Before the Court is Defendant Ronald Michael Capito's motion for compassionate

16   release pursuant to 18 U.S.C. § 3582(c)(1). (Doc. 208.[1]) The motion is based on Mr.

17   Capito's age, medical condition, and the risks posed to him by the ongoing coronavirus

18   ("COVID-19") pandemic. For the following reasons, the motion is denied.[2]

19   **I.      BACKGROUND**

20          Mr. Capito is a 62-year-old man serving a 219-month sentence in the Federal

21   Correctional Institution, Safford ("FCI Safford"). (Doc. 208 at 3.) The sentence arose from

22   Mr. Capito's involvement in 16 armed bank robberies occurring between September 2009

23   and February 2010 in Arizona, Utah, Colorado, and New Mexico. Mr. Capito and his co-

24   defendant, Joel Glore, were indicted in the District of Arizona, District of Utah, District of

25

26   _____
     [1] The motion has also been filed in Case Nos. CR-11-02173-001-PHX-MTL (Doc. 25);
27   CR-11-02174-001-PHX-MTL (Doc. 25); and CR-11-02295-001-PHX-MTL (Doc. 26). All
     future references to filings in this matter will be with respect to Case No. CR-10-08050.
     [2] Both parties have submitted legal memoranda and oral argument would not have aided
28   the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998);
     *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

Colorado, and District of New Mexico. The cases were all transferred to this district. Mr. Capito ultimately pled guilty to six counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and one count of use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(i-ii). (*Id.* at 3.) On May 16, 2012, United States District Judge Neil V. Wake sentenced Mr. Capito to a term of 219 months,[3] with credit for time served, and restitution in the amount of $151,089.00. Mr. Capito's anticipated release date is September 28, 2025. (*Id.*)

Mr. Capito filed the instant motion on August 13, 2020. (Doc. 208.) He seeks a reduced sentence due to "extraordinary and compelling circumstances" including his age and a "number of health issues, including hypertension, obesity, and hyperlipidemia," which he states "substantially increase" his risk of serious harm from COVID-19. (*Id.* at 2.) The Government filed a response in opposition on September 4, 2020 (Doc. 210), and Mr. Capito filed a reply. (Doc. 211.) At the time of Mr. Capito's motion, there were no confirmed COVID-19 cases at FCI Safford. At present, the Federal Bureau of Prisons ("BOP") has reported three cases among FCI Safford staff, and one inmate case.[4] *See BOP COVID-19 Modified Operations Plan*, BOP, https://www.bop.gov/coronavirus/ (last visited Oct. 1, 2020).

## II.   LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c)*; see also Dillon v. United States*, 560 U.S. 817, 824 (2010). Compassionate release is an exception to this general rule. It allows a court to reduce a term of imprisonment if a defendant meets certain requirements. *See* 18 U.S.C. § 3582(c)(1). "Section 3582(c) previously provided for compassionate release only upon motion of the BOP Director." *United States v. Partida*, No. CR 17-08260-001-PCT-DGC, 2020 WL 3050705, at *1 (D. Ariz. June 8, 2020). Now, following the enactment of the First Step Act of 2018 ("FSA"), a defendant may bring a motion for compassionate

---

[3] Mr. Capito's co-defendant, Mr. Glore, was sentenced to a term of 120 months and has since been released.
[4] At the time that Mr. Capito filed his reply brief, BOP had reported two staff cases and zero inmate cases. (Doc. 211 at 2.)

release under § 3582(c) after first exhausting all administrative rights with the BOP. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019 WL 2646663, at *1–2 (D. Ariz. June 27, 2019).

To grant compassionate release, a court must find that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). Extraordinary and compelling reasons include ones related to a defendant's (1) medical condition, (2) age, (3) family circumstances, and (4) other reasons. *See* U.S.S.G. § 1B1.13 n.1. A defendant bears the burden to establish extraordinary and compelling reasons. *United States v. Kapeli*, No. CR 16-00172 JMS (01), 2020 WL 5665057, at *2 (D. Haw. Sept. 23, 2020). A court must also consider whether the defendant is still a danger to the community by consulting the factors listed at 18 U.S.C. § 3142(g). *See* U.S.S.G. § 1B1.13(2). "[C]ompassionate release 'due to a medical condition' is generally treated as 'an extraordinary and rare event.'" *United States v. Hearron*, No. CR 91-392-2-TUC-CKJ, 2020 WL 4569556, at *5 (D. Ariz. Aug. 7, 2020) (citation omitted).

## III.   DISCUSSION

To be eligible for compassionate release, in addition to the exhaustion requirement, Mr. Capito must "demonstrate both the existence of extraordinary and compelling reasons and that he is not a danger to the community." *United States v. Bunnell*, No. CR14-00119-001-PHX-DGC, 2019 WL 6114599, at *1 (D. Ariz. Nov. 18, 2019). The Court addresses these requirements in turn.

### A.   Administrative Exhaustion

The Court must first determine whether Mr. Capito has exhausted the appropriate administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Under the FSA, a court may reduce a sentence where "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf **or** the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A) (emphasis added). Mr. Capito states that he has met

this requirement because on April 3, 2020, he submitted a request for compassionate release to Warden Burch at FCI Stafford. (Doc. 208 at 12.) The request is attached as Exhibit 5 to Mr. Capito's motion. (Doc. 208-5.) Mr. Capito states that more than 30 days have passed but he has not received a response. (Doc. 208 at 12.)

As Mr. Capito notes, "[n]umerous courts have found that a defendant satisfies the exhaustion requirement simply by making a formal initial request and allowing thirty days to elapse prior to filing suit, even where the warden denies the request within thirty days." (*Id.*) *See, e.g., United States v. Fields*, No. 3:12-CR-00022-JKS-1, 2020 WL 2744109, at *4 (D. Alaska May 6, 2020). The Government does not dispute that Mr. Capito has met this requirement. (Doc. 210.) Accordingly, the Court concludes that Mr. Capito has exhausted his administrative remedies. It now turns to the merits of the pending motion.

## B.     Extraordinary and Compelling Reasons

Mr. Capito argues that extraordinary and compelling reasons justify a reduction in his sentence. For the following reasons, the Court does not agree.

### 1.     Mr. Capito's Health Issues

As noted, Mr. Capito is 62 years old and suffers from health issues including hypertension, obesity, and hyperlipidemia. (Doc. 208.) He also asserts that he has a history of "TIA," or transient ischemic attack, which is a "brief episode of neurological dysfunction with a vascular cause without evidence of a stroke on imaging." (*Id*. at 7.) He also has a history of a heart arrhythmia.[5] (*Id*.) Mr. Capito attached various documents regarding his medical issues. For example, Mr. Capito attached a declaration attesting to these conditions, that his recent blood work "indicated that [he] might be at risk for diabetes," and that he has a family history of heart disease.[6] (Doc. 208-2 at 5-6.) He also

---

[5] Mr. Capito also states that BOP's medical staff has determined that he has a 10-year "ASCVD risk" of 11.9%, which indicates that there is a "moderate" risk of developing cardiovascular disease over the next five years. Further, a chest x-ray taken on January 23, 2017, revealed normal to borderline cardiomegaly (enlarged heart). (Doc. 208 at 8.)

[6] The CDC "only recognizes conditions that a person currently has, not conditions that a person is at risk of developing, as increasing the risk of severe illness from COVID-19." *United States v. McPeak*, No. 218CR00069JADNJK2, 2020 WL 4905540, at *2 (D. Nev. Aug. 19, 2020) (citing *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 1, 2020)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

states that, while he remains able to work at FCI Safford, he has "experienced shortness of breath from time to time, and dizziness." (*Id.*) He also states that he is "very afraid of a COVID-19 break-out here at the facility because of [his] health issues, and the inability of inmates to distance themselves from others." (*Id.*)

Mr. Capito also attached a declaration from registered nurse Janet Walsh. (Doc. 208-3.) Ms. Walsh reviewed Mr. Capito's medical records and attested to the aforementioned medical conditions and to his medications.[7] (*Id.* at 2-3.) Mr. Capito also attached a declaration from Marc Stein, M.D., a board-specialized physician in internal medicine specializing in correctional health care. (Doc. 208-4.) Dr. Stein's declaration addresses "the risks of COVID-19 to medically vulnerable inmates in federal prison during the COVID-19 pandemic." (*Id.* at 2.) Dr. Stein states, among other things, that COVID-19 can "quickly spread through medical facilities," that the "[t]ime course of the disease can be very rapid," and that the effects are "very serious, especially for people who are most vulnerable." (*Id.* at 2-3.) Dr. Stein also notes that vulnerable people include those over 50 years old, as well as those with underlying health problems, and that it is "well known in correctional health sciences that individuals in jails and prisons are physiologically comparable to individuals in the community several years older." (*Id.* at 3-4.) Dr. Stein states that Mr. Capito "is elderly, obese (body mass index (BMI) = 31.5) and suffers from hypertension." (*Id.* at 7.) He concluded that Mr. Capito "is at increased risk of serious harm from COVID-19 if he were to contract it and he is at increased risk of contracting it by virtue of being a resident of the Federal Correctional Institution at Stafford." (*Id.*)

The Court agrees that Mr. Capito has medical conditions that place him, or might place him, at an increased risk for severe illness from COVID-19. According to the Center for Disease Control and Prevention ("CDC"), individuals with "[o]besity (body mass index

---

[7] Ms. Walsh also noted that Mr. Capito's medical records indicate that he has a number of "relatively minor" medical conditions, including "osteoarthrosis of [the] right shoulder and osteoarthritis of left ankle, plantar fasciitis of the left heel, renal colic (one episode of passage of a stone in the ureter, and inflammatory liver disease involving slightly elevated liver enzymes, and benign paroxysmal positional vertigo (episode of dizziness triggered by certain changes in head positions)." (*Id.* at 3-4.) Mr. Capito does not invoke these conditions in his motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[BMI] 30 or higher)" are at an "increased risk of severe illness from COVID-19." *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 1, 2020). Further, an individual with hypertension "might be at an increased risk."[8] *Id. See also Kapeli*, 2020 WL 5665057, at *3 (acknowledging that a defendant with obesity and hypertension "has underlying medical conditions that place him or might place him at an increased risk for severe illness from COVID-19."). Further, the CDC has stated that "[a]s you get older, your risk for severe illness from COVID-19 increases. . . . [P]eople in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s. The greatest risk for severe illness from COVID-19 is among those aged 85 or older." *See Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Oct. 1, 2020). Further, eight out of ten reported COVID-19-related deaths in the United States "have been among adults aged 65 years and older." *Id.* Accordingly, as a 62-year-old, Mr. Capito faces a relatively heightened risk as compared with younger inmates.

Nonetheless, while the Court is sympathetic to Mr. Capito's concerns, it concludes that he has not demonstrated that extraordinary and compelling justifications warrant compassionate release. "Several courts have determined that obesity—alone or paired with hypertension—does not by itself provide adequate grounds for compassionate release." *Kapeli*, 2020 WL 5665057, at *4 n.6. *See also United States v. Lavatai*, 2020 WL 4275258, at *1-2 (D. Haw. July 24, 2020) (denying motion for compassionate made by defendant with obesity and hypertension); *United States v. Cain*, No. CR03-5114RBL, 2020 WL 4597307, at *4 (W.D. Wash. Aug. 11, 2020) (defendant's claims of obesity, hypertension, and hyperlipidemia "simply do not rise to the level of an extraordinary and compelling reasons"). Further, although Mr. Capito's age places him at a relatively heightened risk,

---

[8] The CDC "makes no mention of hyperlipidemia." *Cain*, 2020 WL 4597307, at *4. It also does not reference TIA or heart arrhythmia as increased risk factors. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

numerous courts have found that inmates older than Mr. Capito, and with various health issues, did not warrant compassionate release. *See, e.g., United States v. Applewhite*, No. 08-CR-60037, 2020 WL 137452, at *2 (D. Or. Jan. 13, 2020) (denying compassionate release to 80-year-old who "has experienced a serious deterioration in physical health because of the aging process"); *McPeak*, 2020 WL 4905540, at *2 (denying compassionate release to 74-year-old inmate for failure to demonstrate extraordinary and compelling reasons).

The Court notes that Mr. Capito argues that district courts "across the country" have granted compassionate release petitions for defendants "with hypertension and for those who are obese, or a combination thereof." (Doc. 206 at 28.) The Court is not convinced by these authorities. In *United States v. Ullings*, No. 1:10-CR-00406, 2020 WL 2394096, (N.D. Ga. May 12, 2020), the district court granted compassionate release to an inmate with hypertension and obesity. In that case, the district court found that the defendant's age was "66-years old, older than the CDC's cut off for high-risk groups of 65 years," which is not the case here. *Id*. at *4. The district court also found that the "nature and circumstances of the offense also support her compassionate release. [The defendant] was not the leader or mastermind behind the antitrust violations but rather failed to stop her subordinates' illegal conduct. She committed a non-violent offense that . . . was not even a crime in the country where she lived. . . . She is not a danger to anyone." *Id*. at *5. As described further below, those considerations do not apply in the present case.

In *United States v. Foreman*, No. 3:19-CR-62 (VAB), 2020 WL 2315908, (D. Conn. May 11, 2020), the district court granted compassionate release to a 58-year-old woman with hypertension and obesity, noting that if the defendant "had been housed at a facility without any cases of COVID-19, perhaps her underlying medical conditions would not have warranted compassionate release. But the number of cases of COVID-19 at FCI Danbury creates potentially catastrophic consequences for her. As of May 11, 2020, BOP has identified twenty-seven current inmate cases, forty-eight recovered inmate cases, seven current staff cases, fifty recovered staff cases, and one inmate death at Danbury FCI alone."

*Id.* at \*4.  As noted, with four total cases, the status at FCI Safford is markedly different than in *Foreman*.

Finally, in *United States v. Bradley*, No. 2:14-CR-00293-KJM, 2020 WL 3802794 (E.D. Cal. July 7, 2020), the district court granted compassionate release to a 40-year-old man suffering from hypertension, diabetes, and asthma. *Id*. at \*4. The court specifically found that compassionate release was appropriate because "it is not any one of these conditions alone that creates a greater risk of his suffering severe illness from COVID-19; instead, it is the 'particular danger' he faces given his combined conditions of diabetes, hypertension and asthma." *Id*. at \*5. Mr. Capito does not assert that he suffers from diabetes or asthma. These cases are accordingly not persuasive, and the Court determines that Mr. Capito has not demonstrated that his health issues present extraordinary and compelling justifications for his release.

### 2.      COVID-19 Generally

Further, "to the extent that [Mr. Capito] makes a more generalized argument regarding the risk of contracting COVID-19 in a BOP facility, the court disagrees." *United States v. Kaapuni*, No. CR 13-00553 (01) JMS, 2020 WL 4612376, at \*3 (D. Haw. Aug. 11, 2020). Mr. Capito presents numerous concerns about the risks of COVID-19 transmission inside "jails and prisons." (Doc. 208 at 17.) For example, Mr. Capito cites Dr. Stein's characterization of detention facilities as "landlocked cruise ships," in which "no realistic amount of social distancing, disinfection, and other preventive measures renders the level of risk equal to that in an individual's home." (*Id*. at 18.) Mr. Capito argues that detention centers are in fact more dangerous that cruise ships, in that "[s]taff, new detainees, essential visitors, and inanimate objects—all potential vectors for virus—are introduced into the system every day." (*Id*. at 19.) He also raises concerns about FCI Safford specifically. Mr. Capito states, for example, that eight inmates live in an approximately 190 square foot cube, and that bunkmates are "only two feet away from each other while they are sleeping." (*Id*. at 25.) The restrooms are often not cleaned daily and are "ill-equipped with cleaning products." (*Id*. at 26.) As inmates are not permitted to

use the recreation yard, as many as ten at a time exercise in the housing area without wearing masks. Mr. Capito also states that other areas of the facility are not regularly cleaned, including shared tables, computers, and water fountains. (*Id*.)

While these concerns are understandable, "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13." *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020). Such claims would apply to everyone in confinement and, by their nature, do not constitute extraordinary and compelling reasons. *See, e.g., United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, . . . [b]ut the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Compassionate release is, as noted, a "rare" and "extraordinary" remedy, and "courts routinely deny such claims*." United States v. DeMille*, No. 3:18-CR-149-SI, 2020 WL 2992190, at *4 (D. Or. June 4, 2020) (citation omitted).

Lastly, the Court emphasizes that it is mindful that the "COVID-19 pandemic is undeniably grave and its impacts on every aspect of American life are unprecedented." *McPeak*, 2020 WL 4905540, at *2. Nonetheless, as the Government notes, "BOP has taken aggressive steps to protect inmates' health and to keep COVID-19 out of its facilities." (Doc. 210 at 2.) *See BOP Implementing Modified Operations*, BOP, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Oct. 1, 2020). The low number of reported cases at FCI Safford "suggests that the plan is effective there." *McPeak*, 2020 WL 4905540, at *2. The BOP also has "more flexible options it can employ without involving the Court, including home confinement." (Doc. 210 at 1.) It reports that it has been "reviewing all inmates who have COVID-19 risk factors, as described by the CDC, to determine which inmates are suitable for home confinement." *Frequently Asked*

*Questions*, BOP, https://www.bop.gov/coronavirus/faq.jsp (last visited Oct. 1, 2020). At the time of filing, the BOP has placed 7,745 inmates on home confinement. *Id*. The Court does not intend in any way for this Order to affect the BOP's ability to place Mr. Capito on home confinement, should it independently reach that conclusion.

For all of these reasons, the Court concludes that Mr. Capito has not demonstrated extraordinary and compelling reasons for his compassionate release.

## C.   Danger to the Community

Even where extraordinary and compelling reasons exist, compassionate release may not be granted where the defendant is a "danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). The Court also denies Mr. Capito's motion for the independent reason that it cannot conclude that he is no longer a danger to the community.

Mr. Capito, while acknowledging the severity of his crimes, argues that he is not a danger in part because he had no prior felonies before the bank robberies and no history of violence. (Doc. 208 at 33.) The Court has no reason to doubt these statements. Mr. Capito also states that he has been a "model prisoner." (*Id*. at 8.) He has completed numerous vocational and personal development courses during his time in custody. He has also worked for over 9,000 hours in the FCI Safford facilities department. Mr. Capito submitted letters in support of his motion, including from Todd Walden, the General Foreman at FCI Safford, who wrote, "[Mr. Capito] always maintains a positive attitude. His knowledge and skills in the construction field, his leadership among inmates he works around and his ability to work with the staff at FCI Safford is greatly appreciated. Through his hard work and dedication to his work he has saved the Bureau several thousands of dollars." (Doc. 206-2 at 23.) Mr. Capito has also not had any disciplinary action or incident reports during his ten years in custody. (*Id*. at 9.)

The Court commends Mr. Capito's behavior and contributions while in custody. Nonetheless, the Court is not convinced that they demonstrate that he is no longer a danger to society. *See Applewhite*, 2020 WL 137452, at *2 ("The Court acknowledges that Mr. Applewhite has been a model inmate but is unconvinced that such behavior warrants an

abrupt departure from his current sentence."). Mr. Capito and his co-defendant committed 16 armed bank robberies in multiple states. Although Mr. Capito states that he was "not the gunman in the robberies," he also acknowledges that "he and Mr. Glore concocted the idea to rob banks." (Doc. 208 at 4.)   He also states "that he played an equal part in everything that happened." (*Id*. at 5.)

As the Government notes, danger to the community "may, at least in some cases, encompass pecuniary or economic harm." *United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992). Accordingly, the Court declines to find that Mr. Capito is no longer a danger to the community. *See United States v. Makela*, No. 19-CR-00215-CRB-1, 2020 WL 3892865, at *3 (N.D. Cal. July 10, 2020) (declining to determine that defendant, who pled guilty to multiple counts of armed bank robbery, unarmed bank robbery, and attempted bank robbery, was no longer a threat to the community because the court "cannot simply trust that [the defendant] will stay clean and abstain from further criminal acts"); *United States v. Williams*, No. 399CR00161HDMRAM, 2020 WL 5517660, at *3 (D. Nev. Sept. 14, 2020) (A defendant who committed bank robbery "with a threat of violence" over 20 years ago remained a threat to the community; the fact "that all of his offenses were committed more than twenty years ago . . . is only minimally probative given that he has been incarcerated for all of the past twenty years.").

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED denying** Mr. Capito's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(C)(1). (Doc. 208 in CR-10-08050-001-PCT-MTL; Doc. 25 in CR-11-02173-001-PHX-MTL; Doc. 25 in CR-11-02174-001-PHX-MTL; and Doc. 26 in CR-11-02295-001-PHX-MTL.)

Dated this 1st day of October, 2020.

Michael T. Liburdi
United States District Judge

- 11 -