WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>v.<br><br>Ronald Michael Capito,<br><br>  Defendant. | No. CR-10-08050-001-PCT-MTL<br>     CR-11-02173-001-PHX-MTL<br>     CR-11-02174-001-PHX-MTL<br>     CR-11-02295-001-PHX-MTL<br><br>**ORDER** |

Before the Court is Defendant Ronald Michael Capito's Motion for Compassionate Release (Doc. 208), remanded from the Ninth Circuit for further consideration in light of *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021). Having considered Mr. Capito's motion and the parties' supplemental briefing (Docs. 222, 223) under the standard set forth in *Aruda*, the Court again denies the motion.

**I.    BACKGROUND**

The facts underlying Mr. Capito's motion for compassionate release are set forth in the Court's prior order. (Doc. 212.) Mr. Capito is serving a 219-month sentence from his involvement in 16 armed bank robberies. (Doc. 209 at 2; Doc. 222 at 2.) Mr. Capito pleaded guilty to six counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and one count of use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(i–ii). (Doc. 208 at 3.) In May 2012, Mr. Capito was sentenced to a term of 219 months, with credit for time served, and restitution in the amount of $151,089.00. His anticipated release date is September 28, 2025. (*Id.*)

In August 2020, Mr. Capito filed a motion for compassionate release. (Doc. 208.) He sought a reduced sentence due to "extraordinary and compelling circumstances" including his age and a "number of health issues, including hypertension, obesity, and hyperlipidemia," which he states "substantially increase" his risk of serious harm from COVID-19. (*Id.* at 2.) The Government filed a response in opposition (Doc. 210), and Mr. Capito filed a reply (Doc. 211). At the time of Mr. Capito's motion, there were no confirmed COVID-19 cases at Federal Correctional Institution, Safford ("FCI Safford").

On October 1, 2020, this Court denied Capito's motion for compassionate release, finding that his age and medical conditions were not extraordinary and compelling reasons warranting release. (Doc. 212 at 6). The Court also rejected Mr. Capito's argument that a risk of contracting COVID-19 in the Federal Bureau of Prisons ("BOP") warranted release. (*Id.* at 8–10). Finally, this Court concluded that Mr. Capito was a danger to the community. (*Id.* at 10).

While on appeal, the Ninth Circuit in *Aruda* held U.S.S.G. § 1B1.13 is not binding regarding motions brought by defendants pursuant to 18 U.S.C. §3582(c)(1)(A). *Aruda*, 993 F.3d at 801. This case was then vacated and remanded to reassess Capito's motion. *United States v. Capito*, Ninth Cir. No. 20-10320, ECF No. 14 (9th Cir. May 20, 2021). Mr. Capito filed a supplemental brief in light of the remand on August 25, 2021; the Government filed its response on September 3, 2021. (*See* Doc. 222; Doc. 223.)

At present, the BOP has reported that 663 inmates and 101[1] staff members at FCI Safford are fully vaccinated from COVID-19. https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 5, 2021). Currently, there are only 8 confirmed cases of COVID-19 at FCI Safford—all of them staff members. https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 5, 2021).

## II.   LEGAL STANDARD

"A federal court generally 'may not modify a term of imprisonment once it has been

---

[1] The Government notes that this number is likely an underestimate as it does not reflect those "who have received their vaccination in the community rather than the BOP facility." (Doc. 223 at 5.)

imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Compassionate release is an exception to this general rule, allowing a court to reduce a term of imprisonment if a defendant meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). "Section 3582(c) previously provided for compassionate release only upon motion of the BOP Director." *United States v. Partida*, No. CR 17-08260-001-PCT-DGC, 2020 WL 3050705, at *1 (D. Ariz. June 8, 2020). Now, as part of the First Step Act of 2018, a defendant may bring a motion for compassionate release under § 3582(c) after first exhausting all administrative rights with the BOP. *See id.* at *2; *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019 WL 2646663, at *1–2 (D. Ariz. June 27, 2019).

To grant compassionate release, a court must find that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Ninth Circuit has held that "district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Aruda*, 993 F.3d at 801 (quoting *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020)). Further, U.S.S.G. § 1B1.13 provides "extraordinary and compelling reasons" that include (1) a medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, or (4) other reasons as determined by the Director of the BOP. *See* U.S.S.G. § 1B1.13 n.1; *see also Johns*, 2019 WL 2646663, at *1–2. While the Ninth Circuit has determined that U.S.S.G. § 1B1.13 is not binding when a prisoner, rather than the Director of the BOP, moves for compassionate release, it may still "inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant." *Aruda*, 993 F.3d at 802.

In addition to showing extraordinary and compelling reasons, a district court may, but is not required to, consider whether a defendant has shown he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[2] U.S.S.G. § 1B1.13; *see Aruda*, 993 F.3d at 801. 18 U.S.C. § 3142(g) lists factors to be

---

[2] In its prior Order (Doc. 212), the Court treated U.S.S.G. § 1B1.13(2) as binding rather than informative.

- 3 -

considered in this determination including the nature and circumstances of the offense, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the danger that the defendant would pose to the community. *See* 18 U.S.C. § 3142(g). "A defendant bears the burden of demonstrating that he poses no danger to the community upon release." *United States v. Magana-Lopez*, No. CR-11-04200-001-TUC-RCC (JR), 2020 WL 6827766, at *4 (D. Ariz. Nov. 20, 2020).

Finally, Section 3582(c) also requires a court to "consider[] the factors set forth in section 3553(a) to the extent that they are applicable" when analyzing a motion for compassionate release. The § 3553(a) factors include:

> [T]he nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims.

*United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013) (citing 18 U.S.C. § 3553(a)). To grant compassionate release, a court must find both an extraordinary and compelling reason for compassionate release and that the § 3553(a) factors warrant compassionate release. *See Magana-Lopez*, 2020 WL 3574604, at *2 (considering extraordinary and compelling reasons and § 3553(a) factors separately); *United States v. Platt*, No. 18-cr-195-WJM, 2020 WL 3839847, at *3 (D. Colo. July 8, 2020) (same). Thus, "compassionate release 'due to a medical condition' is generally treated as 'an extraordinary and rare event.'" *United States v. Hearron*, No. CR 91-392-2-TUC-CKJ, 2020 WL 4569556, at *5 (D. Ariz. Aug. 7, 2020) (quoting *White v. United States*, 378 F.Supp.3d 784, 787 (W.D. Mo. 2019)).

**III.  DISCUSSION**

To start, the Court reiterates its decision regarding whether Mr. Capito has

exhausted the appropriate administrative remedies. Then, the Court analyzes whether there are extraordinary and compelling reasons warranting Mr. Capito's release. After that, the Court determines whether Mr. Capito poses a danger to the community. Finally, the Court decides whether the § 3553(a) factors warrant Mr. Capito's release.

### A.   Administrative Exhaustion

The Court previously ruled that Capito had exhausted all administrative remedies. (Doc. 212.). In light of *Aruda*, the Court finds no reason to change its analysis regarding administrative exhaustion; and so, the Court finds that Capito did exhaust his administrative remedies.

### B.   Extraordinary and Compelling Circumstances

Mr. Capito argues that extraordinary and compelling reasons justify a reduction in his sentence. (*See* Doc. 222 at 5.) In light of *Aruda*, the Court finds no reason to change its conclusion regarding the existence of extraordinary and compelling circumstances.

#### 1.   Mr. Capito's Health Issues

Mr. Capito is 63 years old and suffers from health issues including hypertension, obesity, and hyperlipidemia. (Doc. 222 at 8.) During supplemental briefing, Mr. Capito referenced the declaration from Dr. Marc Stern, M.D. (Doc. 206-4), a board-specialized physician in internal medicine specializing in correctional health care. (Doc. 222 at 5.) Dr. Stern's declaration addresses "the risks of COVID-19 to medically vulnerable inmates in federal prison during the COVID-19 pandemic." (Doc. 208 at 2 (citing Doc. 206-4).) Dr. Stern states, among other things, that COVID-19 can "quickly spread through medical facilities," that the "[t]ime course of the disease can be very rapid," and that the effects are "very serious, especially for people who are most vulnerable." (*Id.* at 2–3.) Dr. Stern also notes that vulnerable people include those over 50 years old, as well as those with underlying health problems, and that it is "well known in correctional health sciences that individuals in jails and prisons are physiologically comparable to individuals in the community several years older." (*Id.* at 3–4.) Dr. Stern states that Mr. Capito "is elderly, obese (body mass index (BMI) = 31.5) and suffers from hypertension." (*Id.* at 7.) He

concluded that Mr. Capito "is at increased risk of serious harm from COVID-19 if he were to contract it and he is at increased risk of contracting it by virtue of being a resident of the Federal Correctional Institution at Stafford." (*Id.*)

The Court agrees that Mr. Capito has medical conditions that place him, or might place him, at an increased risk for severe illness from COVID-19. According to the Center for Disease Control and Prevention ("CDC"), individuals with a body mass index (BMI) "[greater than or equal to] 30 kg/m$^2$ but [less than] 40 kg/m$^2$" are obese. *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 5, 2021). Obese people are "**more likely** to get severely ill from COVID-19." *Id.* Further, an individual with hypertension is "**more likely** to get severely ill from COVID-19."[3] *Id.*; *see United States v. Kapeli*, CR. NO. 16-00172 JMS (01), 2020 WL 5665057, at *3 (D. Haw. Sept. 23, 2020) (acknowledging that a defendant with obesity and hypertension "has underlying medical conditions that place him or might place him at an increased risk for severe illness from COVID-19"). Further, the CDC has stated that "[o]lder adults are more likely to get very sick from COVID-19. . . . **The risk increases for people in** their 50s and increases in 60s, 70s, and 80s. People 85 and older are the most likely to get very sick." *See Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Oct. 5, 2021). Accordingly, as a 63-year-old man, Mr. Capito faces a relatively heightened risk as compared to younger inmates.

While the Court is sympathetic to Mr. Capito's concerns, it concludes that he has not demonstrated extraordinary and compelling justifications that warrant compassionate release. "Several courts have determined that obesity—alone or paired with hypertension—does not by itself provide adequate grounds for compassionate release." *Kapeli*, 2020 WL 5665057, at *4 n.6; *see also United States v. Lavatai*, CR. NO. 13-00021-

---

[3] The CDC "makes no mention of hyperlipidemia." *United States v. Cain*, NO. CR03-5114RBL, 2020 WL 4597307, at *4 (W.D. Wash. Aug. 11, 2020); *see* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 5, 2021).

SOM-2, 2020 WL 4275258, at *1–2 (D. Haw. July 24, 2020) (denying motion for compassionate release made by defendant with obesity and hypertension); *Cain*, 2020 WL 4597307, at *4 (defendant's claims of obesity, hypertension, and hyperlipidemia "simply do not rise to the level of an extraordinary and compelling reasons"). Further, although Mr. Capito's age places him at a relatively heightened risk, numerous courts have found that inmates older than Mr. Capito, and with various health issues, did not warrant compassionate release. *See, e.g.*, *United States v. Applewhite*, No. 6:08-cr-60037-MC, 2020 WL 137452, at *2 (D. Or. Jan. 13, 2020) (denying compassionate release to 80-year-old who "has experienced a serious deterioration in physical health because of the aging process"); *United States v. McPeak*, No. 2:18-cr-0069-JAD-NJK-2, 2020 WL 4905540, at *2 (denying compassionate release to 74-year-old inmate for failure to demonstrate extraordinary and compelling reasons).

Finally, Mr. Capito argues that he has "presented substantial *uncontroverted* evidence of BOP's inability to care for sick patients during the pandemic." (Doc. 222 at 5.) But, as of January 28, 2021, Mr. Capito is fully vaccinated. (Doc. 223 at 3.) What is more, Mr. Capito received the Pfizer vaccine, the first vaccine to be approved by the FDA. *FDA Approves First COVID-19 Vaccine*, https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine (last visited Oct. 5, 2021). Neither party provides information about the effectiveness of the Pfizer vaccine against the delta variant. But the Government does note that the Pfizer vaccine is "95% effective in preventing infection [from COVID-19], and virtually entirely effective in preventing severe disease, including in participants with medical comorbidities associated with high risk of severe COVID-19." (Doc. 223 at 4.) Mr. Capito offers no evidence of his vaccine's inability to protect him from the delta variant. As such, it appears that Mr. Capito's risk of severe illness due to COVID-19 is negligible. And so, it is not surprising that "[c]ourts in this circuit have found that a defendant's receipt of the COVID-19 vaccine weighs against granting compassionate release." *United States v. Nash*, No. CR-03-00059-001-PHX-JAT, 2021 WL 1969729, at *3 (D. Ariz. May 6, 2021). Accordingly, the Court finds that Mr.

Capito has not demonstrated that his health issues present extraordinary and compelling justifications for his release.

2. COVID-19 Generally

Further, "to the extent that [Mr. Capito] makes a more generalized argument regarding the risk of contracting COVID-19 in a BOP facility, the court disagrees." *United States v. Kaapuni*, CR. NO. 13-00553 (01) JMS, 2020 WL 4612376, at *3 (D. Haw. Aug 11, 2020). Mr. Capito points to the "sheer number of COVID cases and deaths in BOP facilities" to "demonstrate that BOP is unable to manage the pandemic or adequately treat affected inmates." (Doc. 222 at 6.) He highlights the number of COVID cases and deaths nationwide and at the Federal Correctional Institution, Phoenix ("FCI Phoenix"). (*Id.*) The numbers of cases and deaths at FCI Phoenix and across BOP facilities, Mr. Capito argues, creates an extraordinary and compelling circumstance that warrants his immediate release. (*See Id.*)

While Mr. Capito's concerns about COVID-19 are understandable, "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence." *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020). Such claims would apply to everyone in confinement and, by their nature, do not constitute extraordinary and compelling reasons. *See, e.g., United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, . . . [b]ut the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Compassionate release is, as noted, a "rare" and "extraordinary" remedy, and "courts routinely deny such claims*." United States v. DeMille*, No. 3:18-cr-149-SI, 2020 WL 2992190, at *4 (D. Or. June 4, 2020) (citation omitted).

The Court emphasizes that it is mindful that the "COVID-19 pandemic is undeniably grave and its impacts on every aspect of American life are unprecedented."

*McPeak*, 2020 WL 4905540, at *2. Nonetheless, as the Government notes, "BOP has continued to take aggressive steps to try to protect inmates' health and stop the spread of COVID-19 in its facilities." (Doc. 223 at 4.) *See also BOP Modified Operations*, BOP, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Oct. 5, 2021). The conditions at FCI Phoenix may illustrate the conditions at some BOP facilities, but Mr. Capito is housed at FCI Safford, not FCI Phoenix. At FCI Safford, the conditions are different. As previously stated, 588 inmates and at least 101 staff members at FCI Safford are fully vaccinated from COVID-19. The low number of reported cases at FCI Safford "suggests that the plan is effective there." *McPeak*, 2020 WL 4905540, at *2. "The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") substantially increased BOP's statutory authority to transfer inmates to home confinement." (Doc. 223 at 5.) And so, the "BOP is also taking dramatic steps to transfer vulnerable inmates to home confinement in appropriate circumstance." (*Id.*) It reports that it has been "reviewing all inmates who have COVID-19 risk factors, as described by the CDC, to determine which inmates are suitable for home confinement." *Frequently Asked Questions*, BOP, https://www.bop.gov/coronavirus/faq.jsp (last visited Oct. 5, 2021). Currently, the BOP has 7,579 inmates on home confinement while "the total number of inmates placed in home confinement from March 26, 2020 to present . . . is 31,923." *Id.* The Court does not intend in any way for this Order to affect the BOP's ability to place Mr. Capito on home confinement should it independently reach that conclusion.

For these reasons, the Court concludes that Mr. Capito has not demonstrated extraordinary and compelling reasons for his compassionate release. This is enough to end the Court's analysis, but the Court chooses to also examine the danger Capito poses to the community and the 18 U.S.C. § 3553(a) factors.

### C. Danger to the Community

The Court also denies Mr. Capito's motion for the independent reason he still poses a danger to the community. Even if Capito demonstrates extraordinary and compelling reasons for his compassionate release, the Court may choose, but is not required, to deny

his motion if he still poses a "danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2); *see Aruda*, 993 F.3d at 801. Defendant bears the burden of demonstrating that he poses no danger to the community upon release. *Magana-Lopez*, 2020 WL 6827766, at *4.

Mr. Capito, while acknowledging the severity of his crimes, argues that he is safe to release in part because he had no prior felonies before the bank robberies and no history of violence. (*See* Doc. 222 at 6–8.) Mr. Capito also states that he has had an "impeccable prison record," since being incarcerated, pointing to the fact that he has not had any disciplinary action or incident reports during his ten years in custody. (*Id.* at 6; *Id.* at 8.) Mr. Capito's contrition is also admirable, for "not a day . . . goes by that he does not wish that he could take back what he did." (Doc. 222 at 6.) In sum, Mr. Capito has made paying his debt to society a top priority during his incarceration. (*Id.*)

The Court commends Mr. Capito's good behavior and contributions while in custody. But the Court believes that he still poses a danger to society. *See Applewhite*, 2020 WL 137452, at *2 ("The Court acknowledges that Mr. Applewhite has been a model inmate but is unconvinced that such behavior warrants an abrupt departure from his current sentence."). Mr. Capito and his co-defendant committed 16 armed bank robberies in multiple states. Although Mr. Capito states that he was "not the gunman in the robberies," he also acknowledges that "he and [his co-defendant] concocted the idea to rob banks." (Doc. 208 at 4.) He also states "that he played an equal part in everything that happened." (*Id.* at 5.) Furthermore, Mr. Capito admitted to punching his co-defendant after an argument; that co-defendant was found in the woods hypothermic and bloody. (Doc. 223 at 7.)

As the Government notes, danger to the community "may, at least in some cases, encompass pecuniary or economic harm." *United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992). Accordingly, the Court declines to find that Mr. Capito is no longer a danger to the community. *See United States v. Makela*, No. 19-cr-00215-CRB-1, 2020 WL 3892865, at *3 (N.D. Cal. July 10, 2020) (declining to determine that defendant,

who pled guilty to multiple counts of armed bank robbery, unarmed bank robbery, and attempted bank robbery, was no longer a threat to the community because the court "cannot simply trust that [the defendant] will stay clean and abstain from further criminal acts"); *United States v. Williams*, No. 3:99-cr-00161-HDM-RAM, 2020 WL 5517660, at *3 (D. Nev. Sept. 14, 2020) (A defendant who committed bank robbery "with a threat of violence" over 20 years ago remained a threat to the community; the fact "that all of his offenses were committed more than twenty years ago . . . is only minimally probative given that he has been incarcerated for all of the past twenty years.").

### D.   18 U.S.C. § 3553(a) Factors

Even if Mr. Capito had shown extraordinary and compelling circumstances warranting compassionate release and had shown that he did not pose a danger to the community, the Court would still deny Capito's motion because the § 3553(a) factors weigh against compassionate release in Mr. Capito's case. *See United States v. Acosta*, No. CR-03-00075-PHX-RCC, 2021 WL 1790773, at *3 (D. Ariz. May 5, 2021) ("Even if an inmate has presented a compelling and extraordinary case for early release, the Court must also weigh the § 3553(a) factors to determine whether release is warranted.").

Notwithstanding his personal growth and good behavior, the Court notes Capito's "history and characteristics" do not support a reduction of his sentence. Capito planned and executed 16 armed bank robberies across 4 different states. (Doc. 210 at 2.) Although he has demonstrated behavior indicative of rehabilitation, his extensive history of violent crimes counsels against release.

The Court also examines the "nature and circumstances of the offense." If the nature and circumstances of Capito's crime are such that a reduction in time served would not reflect the seriousness of his actions, then that is evidence that the Court should not release Mr. Capito. *See, e.g.*, *United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *3 (N.D. Cal. June 19, 2020) (finding, in part, that the nature of defendant's crime did not warrant reducing defendant's prison sentence). The sheer number of armed bank robberies points to denying release. Bank robbery is an incredibly serious and dangerous crime, and

committing sixteen robberies across four states is indicative of a complete disregard for the law and for the safety of others. Additionally, Capito was well armed when he was arrested. He had a Glock handgun in his possession, a revolver in his trunk, and another loaded firearm was later found at his house. (*Id.* at 8–9.) Capito also exhibited violent behavior before at least one robbery. (*See id.*) His co-defendant told officers that, after hesitating to rob one of their target banks, Capito "got physical" with him and even threatened to kill him. (*Id.*) Prior to his arrest, Capito assaulted his co-defendant and abandoned him bloody and hypothermic in the snow-laden woods. (*Id.*)

The Court also finds that reducing Capito's sentence would undermine the goals that his sentence "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and be consistent with "the sentencing ranges established for" Capito's crimes. 18 U.S.C. § 3553(a)(2)(A)–(C), (4), (6). Capito pleaded guilty and stipulated to a sentence no less than 15 years and no more than 25 years. (Doc. 210 at 2.) Capito received a total sentence of 219 months (18.5 years), which was on the low end of the range, with credit for time served. (*Id.*) Releasing Capito now would be inconsistent with the sentencing ranges established for bank robbery and would signal that courts do not considered armed bank robbery a serious crime. That would promote disrespect for, if not the outright breaking of, the law because the deterrent to committing a violent felony of this nature would be lessened. Finally, it would provide an unjustly lenient punishment and create unwarranted sentence disparities among defendants who have similar records and who have been found guilty of conduct similar to Capito's crimes because he would be released before the minimum stipulated sentence term.

Thus, the Court finds that an evaluation of the § 3553(a) factors counsels against compassionate release. *See Magana-Lopez*, 2020 WL 3574604, at *2 (noting that denial of compassionate release is appropriate when the § 3553(a) factors weigh against release); *United States v. Silva*, No. 4:17-cr-554-PJH-03, 2020 WL 4039218, at *3–4

(N.D. Cal. July 17, 2020) (same); *Rice*, 2020 WL 3402274, at *3 (same); *see also United States v. Esparza*, No. 1:16-cr-00122-DAD-BAM, 2020 WL 4805055, at *6 (E.D. Cal. Aug. 18, 2020) (noting that the court would need to find that the § 3553(a) factors supported release even if extraordinary and compelling reasons for compassionate release were found).

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED denying** Mr. Capito's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1). (Doc. 208 in CR-10-08050-001-PCT-MTL; Doc. 25 in CR-11-02173-001-PHX-MTL; Doc. 25 in CR-11-02174-001-PHX-MTL; and Doc. 26 in CR-11-02295-001-PHX-MTL.)

Dated this 5th day of October, 2021.

Michael T. Liburdi
United States District Judge